## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 16 2018, 10:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Derrick Hicks
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Derrick Hicks,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

May 16, 2018

Court of Appeals Case No.
45A03-1707-PC-1661

Appeal from the Lake Superior Court

The Honorable Diane Ross Boswell, Judge

The Honorable Natalie Bokota, Magistrate

Trial Court Cause No.
45G03-1504-PC-5

**Riley, Judge.**

# STATEMENT OF THE CASE

[1] Appellant-Defendant, Derrick Hicks (Hicks), appeals the post-conviction court's denial of his motion for post-conviction relief.

[2] We affirm.

# ISSUE

[3] Hicks presents two issues on appeal, which we consolidate and restate as the following single issue: Whether Hicks received ineffective assistance of trial counsel.

# FACTS AND PROCEDURAL HISTORY

[4] Between December 10, 2010, and April 7, 2012, Hicks resided in East Chicago, Indiana, with his daughter, M.W. At the beginning of that period, Hicks was over the age of twenty-one and M.W. was under the age of fourteen. During that time, Hicks engaged in sexual intercourse with M.W. multiple times, and M.W. gave birth to Hicks's child.

[5] On June 30, 2012, the State filed an Information, charging Hicks with Count I, child molesting, a Class A felony; Count II, incest, a Class B felony; Count III, sexual misconduct with a minor, a Class B felony; Count IV, intimidation, a Class D felony; Count V, battery, a Class D felony; and Count VI, obstruction of justice, a Class D felony.

[6] On August 30, 2012, an omnibus hearing was conducted where the State indicated its intent to file a habitual offender enhancement against Hicks, and a

jury trial was set for January 22, 2013. On January 15, 2013, the State amended its Information to include habitual offender allegations against Hicks—*i.e.*, two Class B felonies dealing in cocaine committed in 2009 and 2001; and a residential entry offense committed in 1994. The CCS shows that the following day, Hicks's counsel filed a motion to change Hicks's plea, and the matter was set for a guilty plea hearing on January 17, 2013. On the morning of his guilty plea hearing, the State moved to amend the habitual Information after it emerged that the prior drug charges were not offenses committed by Hicks. The State's second amended habitual offender Information alleged that:

1. On or about October 30, 1997, . . . Hicks committed the offense of Assault with a Dangerous Weapon, a Felony; on or about February 19, 1998, . . . and that on or about February 19, 1998, the 17th Circuit Court of Kent County, Michigan sentenced . . . Hicks to six (6) months confinement and thirty-six (36) months probation. . . ; and

2. On or about October 21, 1994, . . . Hicks committed the offense of residential entry, a Class D felony; on or about March 1, 1995, the Superior Court of Lake County convicted . . .Hicks . . . to 1 ½ year with (1) year suspended . . . .

(Appellant's App. Vol. II, p. 150).

[7] On the same day, Hicks pleaded guilty without the benefit of a written plea agreement to Count I, child molesting, a Class A felony; Count II, incest, a Class B felony; Count III, sexual misconduct with a minor, a Class B felony; and for being an habitual offender. The State agreed to dismiss the remaining

Counts. The trial court subsequently accepted Hicks's guilty plea. On May 16, 2013, and June 20, 2013, the trial court conducted sentencing hearings. At the close of the evidence, the trial court sentenced Hicks to thirty years for the Class A child molesting and enhanced that sentence by thirty years for the habitual charge. For the incest and sexual misconduct with a minor convictions, the trial court sentenced Hicks to concurrent ten-year sentences on each Count. The trial court ordered the sentences for the Class B felony incest and Class B felony sexual misconduct with a minor to be served consecutively to the Class A child molesting offense, for a total aggregate sentence of seventy years. A sentencing order was issued on June 20, 2013. On June 27, 2013, the trial court entered an amended sentencing order outlining the aggravating and mitigating factors that it relied on at sentencing.

[8] Hicks appealed challenging only his sentence. On April 29, 2014, we affirmed the trial court. *See Hicks v. State*, No. 49A05-1307-CR-265, 2014 WL 1694464, at *2 (Ind. Ct. App. Apr. 29, 2014). On April 20, 2015, Hicks filed his petition for post-conviction relief claiming that his plea was not intelligently made since he was not properly advised by his trial counsel prior to pleading guilty. On June 18, 2015, the State responded by generally denying Hicks's claims. On December 22, 2015, Hicks's public defender withdrew her representation. On March 7, and March 21, 2016, Hicks proceeded *pro se* and filed amended petitions for post-conviction relief.

[9] On May 17, 2016, the post-conviction court conducted an evidentiary hearing. At the conclusion of the hearing, the post-conviction court directed the parties

to file their proposed findings of fact and conclusions thereon. The parties subsequently filed their proposed findings. In Hicks's proposed findings of facts and conclusions of law, he strenuously argued that his trial counsel was ineffective for failing to file a motion to strike pursuant to Indiana Trial Rule 12(F) because the State's habitual offender enhancement charge had sequenced his prior unrelated felony convictions in the wrong order. On June 27, 2017, the post-conviction court issued its findings of fact and conclusions thereon stating, in pertinent part;

> 12. On May 17, 2016, the [post-conviction] court held a hearing on the P-C Petition. The [post-conviction] court took judicial notice of the trial and post-conviction files. [Hicks] presented the testimony of his trial attorney. No other evidence was presented.

> 13. Based on the testimony of trial counsel, the court finds counsel had been an attorney for twenty-eight years at the time he represented . . . . Hicks. Counsel did not object to the sequencing of the prior unrelated felonies in the habitual offender count of the Second Amended Information. He disagrees that the habitual offender count does not parallel the requirements of I.C. [§] 35-50-2-8. Specifically, counsel's view of the law is that although the two prior felonies must be unrelated, the order they are listed, old to new or new to old, probably does not matter.

> ****

> *Conclusion of Law*:

> ****

5.  Hicks claims that the habitual offender count embodied in the Second Amended Information violated Ind. Cod. [§] 35-50-2-8(c) because the State listed his more recent felony conviction (the 1998 [a]ssault with a [d]angerous [w]eapon) in the first paragraph of the charge and the more remote felony conviction (the 1995 [r]esidential [e]ntry) in the second paragraph.  Had trial counsel filed a motion to strike the [C]ount, Hicks reasons, the motion would have necessarily been granted.  He claims that trial counsel was ineffective for failing to a file a Motion to Strike the Amended Habitual Offender Enhancement pursuant to Indiana Trial Rule 12(f).

****

8.  I.C. § 35-50-2-8(c) provides

A person has accumulated two (2) prior unrelated felony convictions for purposes of this section only if:
(1) the second prior unrelated felony conviction was committed after sentencing for the first prior unrelated felony conviction: and
(2) the offense for which the [S]tate seeks to have the person sentenced as a habitual offender was committed after sentencing for the second prior unrelated felony conviction.

9.  Ind. Trial Rule 12(F) provides:

**(F) Motion to strike**. Upon motion made by a party before responding to a pleading, or, if no responsive pleading is permitted by these rules, upon motion made by a party within twenty [20] days after the service of the pleading upon him or at any time upon the court's own initiative, the court may order stricken from any pleading any insufficient claim or defense or any redundant, immaterial, impertinent, or scandalous matter.

10. Ind. Trial Rule 1, Scope of the Rules, provide in relevant part:

Except as otherwise provided, these rules govern the procedure and practice in all courts of the [S]tate of Indiana in all suits of a civil nature whether cognizable as cases at law, in equity, or of statutory origin.

11. Hicks has failed to prove that his claim merits post-conviction relief for several reasons. First, there is nothing legally erroneous about the habitual offender [C]ount to which Hicks plead guilty. Hicks seems to have interpreted I.C. [§] 35-50-2-8(c)(1)'s language "the second prior unrelated felony" and the first prior unrelated felony" to be a description of the order in which the State lists the prior convictions. It appears to this court that the description of prior felonies as "first" or "second" refers to which came first in time and which came second in time. There is no legal merit to Hicks's underlying claim that the charge is defective. Counsel does not render ineffective assistance when he refuses to present a meritless claim . . . . .

12. Second, even if the charging [I]nformation were defective in the way the State wrote it, Hicks, charged as he was in a criminal action [sic], could not obtain relief by filing a motion to strike under the civil trial rules. Necessarily, counsel was not ineffective for failing to file a fruitless motion.

13. Finally, even if the charging [I]nformation were defective the burden of proof in post-conviction proceedings rests with the defendant/petitioner. *Whetherford v. State*, 619 N.E.2d 915, 918 (Ind. 1993). A defendant who challenges the [S]tate's proof of an habitual offender charge bears the burden to prove that the convictions did not occur in the required order; that he is not, in fact, a habitual offender. [*Id*.] Hicks acknowledged his guilt under oath of the prior unrelated felonies that comprise the

habitual offender allegation. He has failed to prove that there was anything "unjust or untrue" about the habitual offender determination. *See Linger v. State*, 644 N.E.2d 131, 133 (Ind. 1994) (purpose of post-conviction proceedings is to correct injustice in convictions or sentences.)

14. We conclude that [Hicks] was not denied effective representation.

(Appellant's App. Vol. II, pp. 157-59).

[10] Hicks now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[11] Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1, § 5; *Strowmatt v. State*, 779 N.E.2d 971, 974-75 (Ind. Ct. App. 2002). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 975. The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id*. If an issue was available on direct appeal but not litigated, it is waived. *Id*.

[12] Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we

cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. *Id*. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id*.

[13] Initially, we note that Hicks proceeded *pro se* before the post-conviction court and again in this appeal. We have held on numerous occasions that litigants who choose to proceed *pro se* will be held to the same rules of procedure as trained legal counsel and must be prepared to accept the consequences of their actions. *Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind. Ct. App. 2004). Furthermore, while we prefer to decide cases on the merits, we will deem alleged errors waived where an appellant's noncompliance with the rules of appellate procedure is so substantial that it impedes our consideration of the alleged errors. *Id*. "The purpose of the appellate rules, especially Indiana Appellate Rule 46, is to aid and expedite review, as well as to relieve the appellate court of the burden of searching the record and briefing the case." *Id*.

[14] Pursuant to Indiana Appellate Rule 46(A)(6), the statement of facts should contain a narrative description of the relevant facts in light of the applicable standard of review. In addition, the argument section of an appellant's brief

should "contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on . . . " Ind. App. Rule 46(A)(8)(a). We will not consider an appellant's arguments on appeal when the appellant has failed to present cogent argument supported by authority and references to the record as required by the rules. *Shepherd*, 819 N.E.2d at 463. If we were to address such arguments, we would be forced to abdicate our role as an impartial tribunal and would instead become an advocate for one of the parties. *Id*. This we cannot do. *Id*.

[15] Hicks's statement of fact is one line and he does not engage in a narrative description of the relevant facts in light of the applicable standard of review. Turning to the argument section of Hicks's appellate brief, although Hicks cites a number of cases within the argument section, he fails to use them in developing contentions in support of his position. Rather, they are merely general statements of rules of law without any application to the claims at hand.

[16] While we prefer to decide issues on the merits, where the appellant's noncompliance with appellate rules is so substantial as to impede our consideration of the issues, we may deem the alleged errors waived. *Shepherd,* 819 N.E.2d at 463. Although we would be justified to waive Hicks's issues on appeal, we will nevertheless attempt to address his arguments in so far as we can decipher them. However, we refuse to comb through the record or transcript to find evidence to support his allegations as we will not become an

advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood. *Id.*

## II. *Ineffective Assistance of Counsel*

[17] Hicks contends that he was denied the effective assistance of trial counsel. The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors the result of the proceeding would have been different. *Jervis v. State*, 28 N.E.3d 361, 365 (Ind. Ct. App. 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) *reh'g denied*), *trans. denied*. The two prongs of the *Strickland* test are separate and distinct inquiries. *Id.* Thus, "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001) (quoting *Strickland*, 466 U.S. at 697) *reh'g denied*; *cert. denied*, 537 U.S. 839, 123 S.Ct. 162, 154 L.Ed.2d 61 (2002).

[18] Hicks first contends that his trial counsel's performance was deficient because "his decision to plead guilty was influenced by counsel's error." (Appellant's Br. p. 7). He also claims that his counsel was infective for failing to file a motion to strike pursuant to Indiana Trial Rule 12(F) on the State's "second amendment of the habitual offender enhancement" charge. (Appellant's Br. p. 7).

Because Hicks was convicted pursuant to a guilty plea, we analyze his claims under *Segura v. State*, 749 N.E.2d 496, 500 (Ind. 2001). *Segura* categorizes two main types of ineffective assistance of counsel cases, (1) claims of unutilized defense or failure to mitigate a penalty and (2) claims of "an improper advisement of penal consequences. *Id*. at 507. Hicks's claim falls under the first *Segura* category—"an unutilized defense or failure to mitigate a penalty." *Id.* In such cases, *Segura* requires that "the prejudice from the omitted defense, or failure to mitigate a penalty, be measured by (1) evaluating the probability of success of the omitted defense at trial or (2) determining whether the utilization of the opportunity to mitigate a penalty likely would produce a better result for the petitioner." *Id*. Thus, Hicks had the burden of showing that he would have obtained a better result if his trial counsel had objected to the State's filing of the habitual offender charge.

## A. *Guilty Plea*

Hicks's first contention is that his trial counsel's performance was deficient because his decision to plead guilty was influenced by counsel's error. We note the post-conviction court's Finding #11 stating that

> 11. On March 21, 2016, Hicks filed [an] [a]mendment to his [p]etition for [p]ost-[c]onviction [r]elief alleging numerous claims. However, Hicks addresses only one claim in his proposed findings of fact and conclusion[s] of law: that his trial attorney was ineffective in failing to move to strike the State's Habitual Offender count based on the fact that the prior unrelated felonies are listed in the wrong chronological order . . . . We consider all other claims to be abandoned and waived.

*Wingate v. State*, 900 N.E.2d 468, 475, (Ind. Ct. App. 2009) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."); *see also* Ind. Appellate Rule 46 (A)(8).

(Appellant's App. Vol. II, p. 155).

[21] We agree with the post-conviction court that Hicks waived all other issues not raised in his proposed findings of facts and conclusions of law. Accordingly, Hicks's claim that his trial counsel's performance was deficient because his decision to plead guilty was influenced by counsel's error, which he does not even attempt to explain the error in his appellate brief, is waived for our review.

### B.  *Amendment of Habitual Offender Information*

[22] We now turning to the crux of Hicks's claim, that he was prejudiced by his counsel's failure to object to the State's filing of the second habitual offender charge. In this appeal, Hicks does not contend that his trial counsel was ineffective for failing to object to the State's habitual offender filing based on the fact that his prior unrelated felonies are listed in the wrong chronological order; rather, he argues that the State's filing of the habitual offender enhancement charge was impermissible because it had not been filed within ten days of "Hick's [sic] omnibus date. *Johnican v State*, 804 N.E. 2d 211 (Ind. Ct. App. 2004)." (Appellant's Br. p. 7).

[23] At the omnibus hearing on August 30, 2012, the State indicated its intent to file a habitual offender enhancement. On January 15, 2013, the State amended its

Information to include habitual offender charges—*i.e.*, two Class B felonies dealing in cocaine committed in 2009 and 2001; and a residential entry offense committed in 1994. The CCS shows that on the next day, Hicks's counsel filed a motion to change Hicks's plea, and the matter was set for a guilty plea hearing on January 17, 2013. Prior to that hearing, the State realized that the drug charges were not offenses committed by Hicks, as such, the State filed a second amended Information, primarily amending the habitual offender charge where it excluded the drug charges, maintained the residentiary entry charge committed in 1994, and added a felony assault with dangerous weapon offense committed in 1997.

[24] Prior to Hicks's pleading guilty, Hicks's counsel objected to the State's belated filing of the habitual offender charge and he argued:

> For the record, I want to lodge an objection to their amendment at this late date. They had previously specified certain convictions that they were going to utilize for the enhancement. Those convictions were not . . . [Hicks's]. They were of somebody else. Now the Thursday before trial is supposed to start on Tuesday they amend it. I haven't received any documentation or anything else verifying that these convictions in fact exist. Therefore, we object to the amendment . . .

(Guilty Plea Tr. p. 5). In turn, the State argued

> Your Honor, and the Indiana Code allows that anytime upon a showing of good cause we could have filed -- we can amend to add the habitual standard. The issue in this particular case is that we did have the incorrect person, which [Hicks's counsel] I believe was very aware of that, and at this point in time he had

his NCIC which specifically shows that he is a habitual offender with these two particular convictions. So [Hicks] is very aware of his criminal history, and the statute does allow us to amend anytime before trial. So we're not set for trial until Tuesday.

(Guilty Plea Tr. pp. 5-6). Following the arguments, the trial court overruled the objection raised by Hicks's counsel. In addition, at the post-conviction hearing, Hicks's counsel testified that he objected to the State's filing of that habitual offender charge "arguing that it was untimely." (PCR. Tr. p. 20).

[25] Indiana Code section 35-34-1-5(e) (2013), the version in effect at the time Hicks committed his offenses, provided that an amendment of an Information to add a habitual offender charge

> must be made at least thirty (30) days before the commencement of trial. However, upon a showing of good cause, the court may permit the filing of a habitual offender charge at any time before the commencement of the trial if the amendment does not prejudice the *substantial rights* of the defendant. If the court permits the filing of a habitual offender charge less than thirty (30) days before the commencement of trial, the court shall grant a continuance at the request of the:
>
> (1) State, *for good cause shown*; or
> (2) defendant, for any reason

(emphasis added). "A defendant's substantial rights 'include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights.'" *Erkins v. State*, 13 N.E.3d

400, 405 (Ind. 2014) (quoting *Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009)).

Pursuant to *Segura*, Hicks has the burden of showing that he would have obtained a better result if his trial counsel objected to the State's belated filing of the habitual offender charge. *Segura,* 749 N.E.2d at 500. The excerpt from Hicks's guilty plea hearing defeats Hicks's ineffective assistance of counsel claim. The State initially amended the Information on January 15, 2013 to include three prior felonies in the habitual offender charge. However, upon realizing that two of those prior offenses were not committed by Hicks, on January 17, 2013, the morning of his guilty plea hearing, the State amended the habitual offender allegation. While Hicks's counsel objected to the State's late filing of the second habitual offender allegation filed on January 17, 2013, the State indicated that the amendment for a good cause, and the trial court the State's request. Moreover, from the omnibus date leading up to the guilty plea hearing, Hicks was on notice that the State intended to prove his habitual offender status with his prior convictions. Consequently, Hicks's ineffective assistance of counsel claim on this issue fails.

# CONCLUSION

Based on the above, we conclude that Hicks has failed to establish that he suffered ineffective assistance of trial counsel.

Affirmed.

May, J. and Mathias, J. concur